**Michael C. LIDDELL, a minor, by Minnie LIDDELL, his mother and next friend; Kendra Liddell, a minor, by Minnie Liddell, her mother and next friend; Minnie Liddell; Roderick D. LeGrand, a minor, by Lois LeGrand, his mother**

---

and next friend; Lois LeGrand; Clodis Yarber, a minor, by Samuel Yarber, his father and next friend; Samuel Yarber; Earline Caldwell; Lillie Caldwell; Gwendolyn Daniels; National Association for the Advancement of Colored People; United States of America; City of St. Louis, Plaintiffs,

v.

BOARD OF EDUCATION OF the CITY OF ST. LOUIS, Appellant,

John P. Mahoney, President, Board of Education of the City of St. Louis; Penelope Alcott, a member of the Board of Education; Marjorie R. Smith, a member of the Board of Education; Earl E. Nance, Jr., a member of the Board of Education; Thomas F. Bugel, a member of the Board of Education; Louis P. Fister, a member of the Board of Education; Nancy L. Hagan, a member of the Board of Education; Earl P. Holt, III, a member of the Board of Education; Shirley M. Kiel, a member of the Board of Education; Gwendolyn A. Moore, a member of the Board of Education; Dr. Joyce M. Thomas, a member of the Board of Education; Rufus Young, Jr.; Julius C. Dix; David J. Mahan, Interim Superintendent of Schools; Ronald Leggett, St. Louis Collector of Revenue, Defendants,

State of Missouri; John Ashcroft, Governor of the State of Missouri; William Webster, Attorney General; Wendell Bailey, Treasurer; James Moody, Commissioner of Administration; Robert E. Bartman, Commissioner of Education; Missouri State Board of Education; Roseann Bentley, member of the Missouri State Board of Education; Raymond McCallister, Jr., member of the Missouri State Board of Education; Susan D. Finke, member of the Missouri State Board of Education; Thomas R. Davis, member of the Missouri State Board of Education; Gary D. Cunning-

ham, member of the Missouri State Board of Education; Rebecca M. Cook, member of the Missouri State Board of Education; Sharon M. Williams, member of the Missouri State Board of Education, Appellees,

Special School District of St. Louis County; Affton Board of Education; Bayless Board of Education; Brentwood Board of Education; Clayton Board of Education; Ferguson–Florissant Board of Education; Hancock Place Board of Education; Hazelwood Board of Education; Jennings Board of Education; Kirkwood Board of Education; Ladue Board of Education; Lindbergh Board of Education; Maplewood–Richmond Heights Board of Education; Mehlville Board of Education; Normandy Board of Education; Parkway Board of Education; Pattonville Board of Education; Ritenour Board of Education; Riverview Gardens Board of Education; Rockwood Board of Education; University City Board of Education; Valley Park Board of Education; Webster Groves Board of Education; Wellston Board of Education; St. Louis County; Buzz Westfall, County Executive; James Baker, Director of Administration, St. Louis County, Missouri; Robert H. Peterson, Collector of St. Louis County "Contract Account," St. Louis County, Missouri, Defendants,

St. Louis Teachers' Union, Local 420, AFT, AFL–CIO, Intervenor.

No. 91–2941.

United States Court of Appeals, Eighth Circuit.

Submitted May 12, 1992.

Decided June 26, 1992.

Kenneth Charles Brostron, St. Louis, Mo., argued (Kenneth C. Brostron, Stephen A. Cooper, Joan M. Swartz and Steven J. McMahon, on the brief), for appellant.

John Joseph Lynch, St. Louis, Mo., argued (Michael J. Fields, Bart A. Matanic and John J. Lynch, on the brief), for appellees.

Before McMILLIAN, Circuit Judge, HEANEY, Senior Circuit Judge, and FAGG, Circuit Judge.

HEANEY, Senior Circuit Judge.

The Board of Education of the City of St. Louis appeals from a decision of the district court denying several budget requests for the city's magnet schools. We affirm in part and reverse in part.

On February 4, 1984, this court approved a settlement agreement calling for the establishment and operation of magnet schools in the City of St. Louis. *Liddell v. State of Missouri*, 731 F.2d 1294 (8th Cir. 1984) (en banc) (*Liddell VII*), *cert. denied*, 469 U.S. 816, 105 S.Ct. 82, 83 L.Ed.2d 30 (1984). Eight thousand pupils were then enrolled in the magnet schools. *Id.* at 1309. We stated that "[m]agnet schools under this plan will be distinguished by the features that have made them successful in other cities: individualized teaching, a low pupil-teacher ratio, specialized programs tailored to students' interests, enriched resources and active recruitment." *Id.* at 1311. We added that the new schools should "be phased in over a period of *four years* as provided for by the settlement agreement." *Id.* at 1312.

On November 6, 1986, we again addressed magnet school issues. *See Liddell v. Bd. of Educ. of the City of St. Louis, Mo.*, 804 F.2d 500 (8th Cir.1986) (*Liddell X*). On that occasion, we made it clear that the features listed above should be present in both *the specialized and general curriculum* of the magnet schools. *Id.* at 502.

Nearly one year later, on September 17, 1987, we noted that magnet school enrollment had increased to 8,600 students and stated that to reach the goal that this court established of increasing the interdistrict magnet enrollment to 14,000 students, "the programs must be attractive to county parents and students, and the facilities *must be well located and comparable to facilities in the county schools." Liddell v. Bd. of Educ. of City of St. Louis, Mo.*, 830 F.2d 823, 829 (8th Cir.1987) (*Liddell XIII*) (quoting *Liddell X* at 503). We further discussed several disputed cost items and stated that "[t]o the extent that the Magnet Panel[1] believes the 'A components' *are essential* in the *interdistrict* magnets, they shall be included, and the State shall be required to pay their full cost." *Id.* at 829–30.[2]

At issue in this case is whether the State must pay its share of certain disputed start-up costs for several new or expanded magnet schools. The district court held that it did not. 771 F.Supp. 1493. The disputed items are as follows:

| | | Estimated Cost |
|---|---|---|
| 1. | A second science laboratory at Busch Academic and Athletic Academy. | $42,126 |
| 2. | Computerized vocal music equipment at Busch. | 4,788 |
| 3. | Computers in individualized classrooms at Washington Montessori School. | 10,950 |
| 4. | Classroom computers in the Wilkinson School for children in pre-school, kindergarten, and grades 1 and 2. | 23,466 |

■ The proper standard for the Budget Review Committee and the district court to use in evaluating funding requests is whether the equipment requested is necessary to the success of the enriched program or the general curriculum at the magnet school. *See Liddell XIII*, 830 F.2d at 829–830. After the Budget Review Committee split evenly on whether to approve the above expenditures, the chairman of the Committee cast the deciding vote. The chairman recommended funding only for the individualized computers at Washington Montessori. On review, the district court used the following test to determine whether to approve or disapprove the start-up equipment: "[T]o qualify for desegregated funding under the Magnet Plan, the item must withstand close scrutiny as to its absolute need in order to carry out a specific magnet program."

The district court's test is more stringent in two respects than the one that this court has previously established. First, the district court required strict scrutiny of the request and an *absolute need* for the requested equipment. This is a step beyond the actual requirement that an item be necessary to the success of the curriculum as a whole or a particular program. Second, under the district court's test, the equipment must be necessary to carry out a *specific magnet program.* This ignores our previous admonition that the general curriculum of the magnet schools must meet the same high standards as the specialized programs. *Liddell X*, 804 F.2d at 502.

■ Ordinarily, when a district court has used an improper legal standard in making a determination, we would remand to the district court to permit a decision under the appropriate standard. *See, e.g., Carter v. United Food and Commercial Workers, Local No. 789*, 963 F.2d 1078 (8th Cir.1992) (remanding to district court). In this case, however, we think it clear that if the appropriate standard is applied, the expenditures at Busch and Wilkinson should not be approved. The Chairman of the

---

1. The Budget Review Committee has now taken over the duties of the Magnet Panel, which had been established with the approval of the district court. *See Liddell VII*, 731 F.2d at 1323–24.

2. The funding formula has since been modified by agreement of the parties with the approval of the district court.

Budget Review Committee, who cast the deciding vote, indicated that he did not feel the programs were necessary to either the success of the enriched programs or the general curricula at the magnet schools. Moreover, the school district has not made an adequate showing that the requested equipment meets that standard. On the other hand, the Washington Montessori equipment was approved by the Chairman of the Committee, and it clearly meets the appropriate standard. Thus, the State is obligated to pay its share of the cost of the Washington–Montessori equipment.

The School District argues that, out of deference to its judgment on educational matters, we should approve the funding decisions that it has made in this case. *See Milliken v. Bradley*, 433 U.S. 267, 281, 97 S.Ct. 2749, 2757–58, 53 L.Ed.2d 745 (1977). We agree that we owe deference to the School Board's decisions, but where, as here, the State contributes a large part of the cost of the magnet school programs, it too must have a voice in determining the schools' expenditures. In order to resolve the inevitable disputes between the State and the School District, we established the rule that equipment requests should be approved if they are necessary to the success of the enriched program or the general curriculum at the magnet school. We have applied that standard in this case, and it is important that in making future funding decisions, the Budget Review Committee and the district court adhere to this standard as well.

We think it important to note that at the present time, the magnet schools are thoroughly integrated and enroll 9,200 students. This is indeed a substantial accomplishment, particularly because a recent study indicates that the pupils at the magnet schools receive higher test scores than those at other St. Louis schools. *See St. Louis Post Dispatch*, January 17, 1992. Notwithstanding the progress that has been made in establishing and operating these schools, the 14,000 student goal remains unmet. The Board of Education assured the court at oral argument that it understood the importance of reaching this goal as soon as possible. We strongly encourage the School District and the State of Missouri to cooperate fully to ensure that the target of 14,000 students is met promptly. Their continued efforts to enroll additional students in the magnet schools will ensure that as many children as possible will enjoy the advantage of an excellent, integrated education.